IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for ANB FINANCIAL, N.A., a federally-chartered financial institution,<br><br>     Plaintiff,<br><br>v.<br><br>WS SLEEPING INDIAN RANCH, LLC; ROBERT KENT MADSEN, an individual; JEFFERY JASON SCOTT, an individual; RAYMOND WELLER, an individual,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING THE FDIC'S [21] MOTION FOR SUMMARY JUDGMENT**<br><br>Civil No. 2:12-cv-00818-DN<br><br>District Judge David Nuffer |

This matter came before the court on Plaintiff Federal Deposit Insurance Corporation as Receiver for ANB Financial, N.A's ("FDIC-R") Motion for Summary Judgment (the "Motion").[1] On June 26, 2013, Defendant Raymond Weller ("Weller") filed an Opposition to the Motion.[2] The remaining defendants did not respond to the Motion. No hearing on the FDIC-R's motion was held. The court, having reviewed the memoranda filed by the parties and considering itself fully advised, hereby grants summary judgment in favor of the FDIC-R for the reasons set forth herein.

**Undisputed Facts**

1.     On October 13, 2006, Defendants Robert Kent Madsen ("Madsen"), Jeffery Jason Scott ("Scott"), and Weller, on behalf of Sleeping Indian Ranch, LLC ("Sleeping Indian"), signed

---

[1] Docket no. 21, filed May 21, 2013.

[2] Docket no. 22.

and thereby entered into a note under which ANB agreed to loan Sleeping Indian the amount of $2,347,500.[3]  The loan was designated as Loan No. 128037156 (the "10/06 Note").[4]

2. On or about October 13, 2006, Defendants Madsen, Scott, and Weller (the "Guarantors") each executed absolute, unconditional, and unlimited guaranty agreements in their personal capacities, promising ANB to be jointly and severally liable for Sleeping Indian's indebtedness under the 10/06 Note, as well as any interest accumulated, fees, and all costs and expenses associated with the enforcement of the 10/06 Note (the "10/06 Note Guaranties").[5]

3. On October 17, 2007, Defendants Madsen, Scott, and Weller, on behalf of Sleeping Indian, signed and thereby entered into a note under which ANB agreed to make a loan to Sleeping Indian in the amount of $2,700,000.[6]  The loan was designated as Loan No. 150001479 (the "10/07 Note").[7]

4. On or about October 17, 2007, Defendants Madsen, Scott, and Weller each executed absolute, unconditional, and unlimited guaranty agreements in their personal capacities, promising ANB to be jointly and severally liable for Sleeping Indian's indebtedness under the 10/07 Note, as well as any interest accumulated, fees, and all costs and expenses associated with the enforcement of the 10/07 Note (the "10/07 Note Guaranties").[8]

---

[3] Docket no. 11 at p. 2.

[4] Docket no. 21-1.

[5] Docket no. 11 at p. 2.  A copy of each of the 10/06 Note Guaranties is at docket nos. 21-2, 21-3, and 21-4, respectively.

[6] Docket no. 11 at p. 2.

[7] Docket no. 21-5.

[8] Docket no. 11 at p. 3.  A copy of each of the 10/07 Note Guaranties is at docket nos. 21-6, 21-7, and 21-8, respectively.

5.      On October 30, 2007, Defendants, on behalf of Sleeping Indian, signed and thereby entered into a renewal of the 10/06 Note (the "10/06 Renewal").[9]

6.      ANB funded the 10/06 and 10/07 Notes, which were its only obligations under the 10/06 and 10/07 Notes, the 10/06 Renewal, and each of the 10/06 Note Guaranties and the 10/07 Note Guaranties (collectively, the "Guaranties").[10]

7.      Under the 10/06 Note, Sleeping Indian was required to make interest payments "On Demand, But If No Demand Is Made Then: Monthly Beginning - November 13, 2006."[11]

8.      Under the 10/06 Note, Sleeping Indian was required to pay the principal in full "On Demand, But If No Demand Is Made Then: At Maturity - October 13, 2007."[12]

9.      This maturity date was extended by the 10/06 Renewal which extended the maturity date to April 30, 2008.[13]

10.     The 10/06 Note and the 10/06 Renewal both provide that "fail[ure] to make a payment on time or in the amount due," and "fail[ure] to pay or keep any promise, on any debt or agreement [Sleeping Indian] has with [ANB]" are events of default.[14]

11.     Under the 10/07 Note, Sleeping Indian was required to make interest payments "On Demand, But If No Demand Is Made Then: Monthly Begining - November 17, 2007."[15]

12.     Under the 10/07 Note, Sleeping Indian was required to pay the principal in full "On Demand, But If No Demand Is Made Then: At Maturity - April 17, 2008."[16]

---

[9] Docket no. 11 at p. 3.  A copy of the 10/06 Renewal is at docket no. 21-9.
[10] Docket no. 21-10 at ¶¶ 20, 21, and 24.
[11] Docket no. 21-1.
[12] *Id*.
[13] Docket no. 21-9.
[14] Docket nos. 21-1 and 21-9.
[15] Docket no. 21-5.
[16] Docket no. 21-5.

13. The 10/07 Note provides that "fail[ure] to make a payment on time or in the amount due," and "fail[ure] to pay or keep any promise, on any debt or agreement [Sleeping Indian] has with [ANB]" are events of default.[17]

14. Under the Guaranties, the Guarantors guaranteed "full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise," of the Notes.[18]

15. Sleeping Indian did not make the monthly interest payment for February 2008 on the 10/06 Note.[19]

16. Sleeping Indian did not make the monthly interest payment for January 2008 on the 10/07 Note.[20]

17. ANB advanced $5,055,884 under the Notes.[21] The amounts advanced by ANB to Sleeping Indian under the Notes were never repaid.[22] Defendant Weller is the only defendant who has provided an answer, and he has admitted the failure to pay.[23]

18. Under the Notes, FDIC-R is entitled to collect interest on the amounts advanced under the Notes at the non-default contract rate of prime plus one percent (the initial rate was 11%) and default contract rate of eighteen percent (18%).[24] The accumulated unpaid interest on the Notes is $4,929,286.19 as of May 17, 2013.[25]

---

[17] Docket no. 21-5.
[18] Docket nos. 21-2, 21-3, 21-4, 21-6, 21-7, and 21-8.
[19] Docket no. 21-10 at ¶ 12.
[20] Docket no. 21-10 at ¶ 16.
[21] Docket no. 21-10 at ¶¶ 20 and 22.
[22] Docket no. 21-10 at ¶¶ 14 and 18.
[23] Docket no. 11 at p. 3.
[24] Docket nos. 21-1 and 21-5.
[25] Docket no. 21-10 at ¶¶ 20 and 22.

19. Under the Notes, FDIC-R is entitled to collect penalties and late fees as provided in the Notes totaling $44,981.08 as of May 17, 2013.

20. Under the Notes and the Guaranties, FDIC-R is entitled to collect its attorney's fees and costs of collection as provided in the Notes in an amount to be established upon later application.[26]

21. The Notes each contain the following waiver: "I waive any defenses I have based on suretyship or impairment of collateral."[27]

22. The Guaranties each contain the following waiver:

> The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the undersigned): ... (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, of to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security ... .[28]

23. The Guaranties also go on to state: "The undersigned waives any and all defenses, claims or discharges of Borrower, or any other obligor, pertaining to indebtedness, except the defense of discharge by payment in full."[29]

## Discussion

A. <u>Defendants Breached The Contracts.</u>

"The elements of a *prima facie* case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and

---

[26] Docket nos. 21-1 – 21-9.

[27] Docket nos. 21-1 and 21-5.

[28] Docket nos. 21-6 – 21-8.

[29] *Id.*

(4) damages."[30] Defendants signed contracts – *i.e.*, the 10/06 and 10/07 Note the 10/06 Renewal and the Guaranties (collectively the "Contracts") – the validity of which are not in question. FDIC-R performed its obligation under those Contracts (ANB loaned Sleeping Indian $5,055,884.00). Sleeping Indian breached its obligations under the 10/06 and 10/07 Note and the 10/06 Renewal by not making the agreed-upon monthly interest payment and by not paying the balance due on the maturity dates. The Guarantors breached their Guaranties when the interest payments and balance due on the Notes, which payment they guarantied, were not paid on the agreed-upon dates. FDIC-R has been damaged by not receiving the amounts it was owed under the Contracts and by having to pursue collection and legal action to recover these amounts.

Defendants received the benefit of the Contracts – *i.e.*, the loan proceeds for which Defendants executed the 10/06 and 10/07 Notes, the 10/06 Renewal, and the Guaranties in ANB's favor. Sleeping Indian defaulted on its payment obligations. Furthermore, the Guarantors have failed to honor their obligations under the guaranties. Thus, FDIC-R has not received the benefit of the bargain and has been damaged. Accordingly, each of the elements for a breach of contract claim have been satisfied, and FDIC-R is entitled to summary judgment on its breach of contract claims against each of the Defendants.

Additionally, because Defendants WS Sleeping Indian Ranch, Robert Kent Madsen, and Jeffery Jason Scott did not oppose the Motion, summary judgment is proper pursuant to DUCivR 56-1(g).

  B. <u>Defendant Weller Waived His Defense for Impairment of Collateral.</u>

It is well settled in Utah that a borrower or a guarantor may waive claims or defenses. Specifically relevant to this case, in Utah "'[a] guarantor may … expressly waive his or her right

---

[30] Bair v. Axiom Design, L.L.C., 20 P.3d 388, 392 (Utah 2001).

to raise the defense of impairment of collateral.'"[31]  In this matter, the execution and content of the Notes, the Renewal, and the Guaranties is undisputed.  Defendants unequivocally waived affirmative defenses and potential claims, including the right to claim discharge based on impairment of collateral.  Accordingly, summary judgment against Defendants is proper.

      C.      <u>FDIC-R is Entitled to Recover its Attorneys' Fees and Costs.</u>

"[A]ttorney fees may be awarded only when they are authorized by statute or contract."[32]  The 10/06 and 10/07 Notes, the 10/06 Renewal, and the Guaranties all contain provisions entitling FDIC-R to recover attorneys' fees and costs incurred in connection with collecting from Defendants or enforcing the Contracts.  FDIC-R, as ANB's successor-in-interest, is entitled to recover its reasonable attorneys' fees and costs in an amount to be established by subsequent application.

      D.      <u>FDIC-R is Entitled to Post-Judgment Interest.</u>

The Contracts provide for post-judgment interest and therefore, the judgment will bear post-judgment interest at the amount set by law.

      E.      <u>FDIC-R is Entitled to Judgment in the Amount of $10,030,151.27.</u>

The combined total amount owed under the Notes is $10,030,151.27 as of May 17, 2013. This amount includes principal, interest at the contract and default rates, respectively, and penalties and fees.  In construing the Contracts as a matter of law, the court holds that the $100 late fee is not limited to missed principal payments, but is applicable to each missed monthly interest payment.  Monthly interest payments are required until each of the Notes are paid in full. Accordingly, the total amount due and owing under the Notes is calculated as follows:

---

[31] Bank of the West v. Sabey, 2012 WL 4325642 (D. Utah 2012) (*quoting* Seftel *v. Capital City Bank*, 767 P.2d 941, 947 (Utah Ct.App. 1989)).

[32] Fericks v. Lucy Ann Soffe Trust, 2004 UT 85, ¶ 23, 100 P.3d 1200.

(1)	the unpaid principal, as of May 17, 2013, on the 10/06 Note of $2,355,884.00;

(2)	the non-default interest on the 10/06 Note, which accrued at a rate of prime plus one percent (the initial rate was 11%) of $589,866.39;

(3)	the default interest on the 10/06 Note, which accrued at a rate to make the overall interest rate on the loan eighteen percent (18%), of $1,682,476.29;

(4)	the penalties and fees associated with the 10/06 Note of $18,098.10;

(5)	the unpaid principal, as of May 17, 2013, on the 10/07 Note of $2,700,000.00;

(6)	the non-default interest on the 10/07 Note, which accrued at a rate of prime plus one percent (the initial rate was 11%) of $694,699.76,

(7)	the default interest on the 10/07 Note, which accrued at a rate to make the overall interest rate on the loan eighteen percent (18%), of $1,962,243.75; and

(8)	the penalties and fees associated with the 10/07 Note of $18,098.10.

The combined total per diem rate for each day after May 17, 2013 is $2,519.77, which is the sum of the per diem rate on the 10/06 Note of $1,174.14 and the per diem rate on the 10/07 Note of $1,345.63.

**Order**

It is therefore ORDERED, ADJUDGED, and DECREED that FDIC-R is entitled to a judgment of $10,030,151.27 as of May 17, 2013 plus interest accumulated thereafter until the date of this judgment at the contract rate of 18% on the unpaid principal amount (which is a per diem amount of $2,519.77), as well as post-judgment interest on the judgment amount at the rate set by law, together with costs and attorney's fees.  FDIC-R shall submit its motion for attorney's fees on or before Wednesday October 16, 2013.

Dated October 2, 2013.

BY THE COURT:

_____
David Nuffer
United States District Judge